## JACOBY *v.* BECKETT AND WIFE.

Where land is sold as containing a certain number of acres, and a survey is made of it at the time, in presence of the grantor and grantee, and the latter takes possession, and occupies it over fourteen years, and the facts show that neither party contemplated going further upon the land of the grantor, in the direction in

which the residue of his land was situated, than the survey indicated, and there was no fraud, or misrepresentations, or written contract broken, and the residue of the grantor's land was admitted by both parties to have been of much greater value than the part sold, but the land sold proves to contain a few acres less than the parties, at the time, supposed it did contain:

*Held*, that the grantee can not compel the grantor to make up the deficiency by conveying other land, etc.

APPEAL from the *Clinton* Circuit Court.

PERKINS, J.—In June, 1845, *Daniel K. Jacoby* and *Robert Beckett* were residents of *Butler* county, *Ohio*. *Beckett* owed *Jacoby* one thousand or twelve hundred dollars. He owned a large tract of land in *Clinton* county, *Indiana,* and agreed to convey to *Jacoby* one hundred and twenty acres off the west side of the tract, in payment of the debt above mentioned. There were a cabin and a well in the central part of *Beckett's* tract of land, and he told *Jacoby* he thought the one hundred and twenty acres off the west side would take them in. *Jacoby* agreed to take the land for the debt. The parties came together to *Indiana,* procured a surveyor to stake off one hundred and twenty acres on the west side of *Beckett's* tract, which he proceeded to do; but found the parcel set off lacked a few rods of including the cabin and well. *Jacoby* declined taking the land unless he could get them. It was then agreed, that he should purchase seven acres and twenty hundredths more, in a strip along the east line of his one hundred and twenty acres, for eleven or twelve dollars an acre, or, as one witness says, for a horse, which strip would take in the cabin and well; and the surveyor staked them off, pursuant to the agreement.

The remainder of *Beckett's* tract of land, being the east portion, was cultivated or timbered, and more valuable than the portion sold, and *Beckett* would not sell any of it at the price taken for the western portion. *Beckett* and *Wife* executed a deed to *Jacoby,* in which the land sold is described

as follows: " Commencing at the south-west corner of the north-west fractional quarter of section 6, township 21, north, of range 1, east; thence north one hundred and eighteen poles to a stake on the Michigan road; thence north one hundred and twenty-nine poles and fifteen links, variation sixty-five degrees east, to a stake on said road, east thirty poles to a corner, witnessed by a beach, twenty inches diameter, south, eighty-four degrees west, sixteen links, and a sugar-tree, north, fifteen degrees east, seventeen links; thence south one hundred and fifty-nine poles to a stake, witnessed by a beach tree, thirty inches diameter, north, sixty-five degrees east, forty-three links; thence west one hundred and forty-two poles and twenty-one links to the place of beginning; containing one hundred and twenty-seven acres and twenty-hundredths of land."

*Jacoby* took possession of the land, and fenced and occupied it, according to the survey, without complaining, for upward of fourteen years, when he instituted this suit, alleging a mistake in the survey, occasioning a deficiency of about seven acres in quantity of land conveyed to him, and asking that his east line be moved enough further east, upon the land still owned by *Beckett*, to cover the alleged deficiency. It appears that the question of the accuracy of the first survey had been upon his mind " for several years." The Court below decided that *Jacoby* was not entitled to any relief, and dismissed his suit.

It may be mentioned, that *Jacoby* and *Beckett* both accompanied the surveyor, as far as he went, around the tract of land, and that the survey seems, by their consent, to have been carelessly made, partly by actual measurement, and partly by estimate; and that it does not appear that there was any written contract prior to the deed.

We think the Court below decided correctly. The case made is that of an executed contract. The deed has been made, the consideration has been all paid, and possession

taken. It is not governed by the rules that might apply were the suit for a specific performance of an unexecuted contract. A rescission is not asked, and would not be granted on the facts, if it were. The plaintiff asks for a new deed, covering a strip containing seven more acres upon his east line; but he can not have this, because, at the original sale, neither party contemplated going further east than to take in the well and cabin, and beyond that the land is too valuable to go at the price. The plaintiff has got all the land he desired, but he paid a horse, or seventy or eighty dollars more than he expected to, for it. Under. some circumstances that sum might have been recovered back. But in this case there was no fraud, no misrepresentation, no previous written contract departed from; the party took such means as he desired to establish his lines and corners; he was acquainted with them all; he took his deed by metes and bounds; the mistake was a very slight one; he has acquiesced in it, after having it upon his mind till the statute of limitations would bar a recovery back of money paid, even had it not been paid under such circumstances as probably bound him in the outset. *Marvin* v. *Bennett*, 8 Paige, 312. Fry on Specf. Perfm., Am. ed., top p. 315. Adams' Eq. Sid., p. 168. 1 Story's Eq., sec. 144. Willard's Eq., p.

*Per Curiam.*—The judgment is affirmed, with costs.

*J. N. Sims*, for the appellant.

*R. P. Davison*, for the appellees.